[Civ. No. 8993. First Appellate District, Division Two.—March 19, 1934.]

JOHN C. MacFARLAND, as Executor, etc., Respondent, v. CITY OF LOS ANGELES (a Municipal Corporation) et al., Appellants.

Erwin P. Werner, City Attorney, and Frederick von Schrader and Loren A. Butts, Assistants City Attorney, for Appellants.

Gibson, Dunn & Crutcher, H. F. Prince and Ira C. Powers, for Respondent.

STURTEVANT, J.—From a judgment in favor of the plaintiff enforcing the specific performance of a written contract the defendants have appealed and have brought up the judgment-roll and a bill of exceptions.

The plaintiff commenced the action as executor of the estate of Hancock Banning, deceased. During his lifetime Hancock Banning, Esperanza Sepulveda de Davis and Lucy Banning Ross entered into a tripartite contract which was the subject matter of the action. In his complaint the plaintiff pleaded the written instrument *in haec verba.* The trial court made a full set of specific findings of fact on which the decree was based.

The contract as found by the court is as follows:

"This Indenture, made and entered into this 30th day of March, 1923, by and between Lucy Banning Ross, daughter of Mary Banning, deceased, party of the first part, and Esperanza Sepulveda de Davis, one of the heirs of A. W. Sepulveda, deceased, party of the second part, and Hancock Banning, party of the third part.

"Witnesseth:

"That, whereas, the party of the first part brought an action against the parties of the second and third part and other persons in the Superior Court of the State of California, in and for the County of Los Angeles, being Case No.

104011, to quiet title to certain lands more particularly described in the complaint in said action and in the *Lis Pendens* filed in said action in the office of the County Recorder of Los Angeles County; and

"Whereas, the party of the second part has filed her answer asserting claim to all the portions of said property hereinafter described, and the party of the third part has asserted title to portions thereof; and,

"Whereas, the respective claims of the parties hereto to said property hereinafter described have been adjusted and settled by agreement between themselves;

"Now, Therefore, in consideration of the premises and of the mutual covenants and agreements on the part of the others each of the parties hereto agree as follows, towit:

"First—That the first party herein is the owner of ¼ undivided of all that portion of said property described in the complaint in said action lying Southerly of the Southerly line extended of the United States Pierhead line as now established for the Inner Harbor of San Pedro, and the party of the second part is the owner of the other undivided ¾ interest in said property, all of which property herein described lies East of and outside of Tide Land Location No. 154;

"Second—It is further stipulated and agreed that the party of the second part is the owner of all that portion of the said property described in said complaint which lies between the Southerly line of said Government Pierhead line extended to the East line of said tide land location No. 154 and the South line of Lot 18, Sheet No. 4, Tract No. 3192 extended north 85 degrees 41' 14" West to the Westerly line of the property described in the complaint, and in consideration of the release and waiver by the said party of the third part of his claim to the lands above described the second party hereby gives to the said party of the third part the option as hereinafter set forth to purchase that portion of the land hereinabove described which lies between the Northerly and Southerly Government Pierhead lines extended above referred to, the price for said property to be at the same rate per acre that the property which lies Southerly of the Southerly pierhead line may be sold for by the second and third parties, to be paid cash upon delivery of a good and sufficient deed conveying said property to the said third party; reserving, however, right of way 100

feet in width across the North and South ends of said last described property adjoining said pierhead lines respectively for navigation purposes and for an extension across said strips of the Government channel, with the right at all times to excavate or cause the same to be excavated to the same depth as the said Government channel, with the right to use the same for shipping purposes, said option to be exercised within 30 days after the final determination as to ownership of the east 285 feet of Tideland location No. 154, and not before, and only in the event that such determination is in favor of the third party. If in favor of the second party said option shall not be exercised, and said property shall remain the property of the second party, but subject to the 100 foot strip easement for channel purposes for the benefit of the other two parcels above described.

"In consideration of the premises the second party agrees with the first party that in the event the said third party or any party shall purchase said land, she will pay the first party one-quarter of the purchase price as the same may be received by her; provided, however, if said parcel shall be sold by her in conjunction with that part of Tide Land location No. 154 adjoining same the price shall be the average price of all the land so sold. It is understood that in the event the second party shall lease said parcel in conjunction with any part of Tide Land location No. 154 the first party shall have no rights to any part of the rental.

"Third—The parties hereto further agree that they will proceed with diligence to execute the necessary conveyances from each to the other to consummate this agreement.

"Fourth—It is further agreed between the first and second parties hereto that they will proceed diligently with the sale of those portions of said property lying South of the said Southerly Government pierhead line extended for the best price obtainable as it is the desire of all the owners thereto to sell the same."

The defendants state several points each of which is, in effect, an attack on the findings. In reply, the plaintiff makes a preliminary objection as to the scope of the hearing in this court on such attacks. He calls to our attention that in the bill of exceptions there are no exceptions on the ground of the insufficiency of the evidence to justify the findings or any portion of them. He then asserts that this court may not extend its examination into the evidence.

The plaintiff's objection is supported by the statute and by the decisions. (Code Civ. Proc., sec. 648; *Mills* v. *Brady,* 185 Cal. 317 [196 Pac. 776]; *Schultz* v. *City of Venice,* 200 Cal. 50, 54 [251 Pac. 913]; 2 Cal. Jur. 708 et seq.) In what follows we will confine our attention to a consideration of the face of the findings.

█ With meticulous care the court prepared findings reciting in detail the acts showing that the option in favor of Hancock Banning was duly exercised in accordance with the terms of said instrument. In those findings the facts show that the "final determination" was made by the acts of the parties in exchanging certain conveyances. The defendants complain because there was no showing of a final determination by *any court* having jurisdiction of the subject. We think it sufficient to remark that the written instrument did not call for a final determination by a *court.* The trial court expressly so found. In doing so it acted entirely within the law. (Civ. Code, sec. 1644.) It follows that the first point made by the defendants may not be sustained.

█ In the second point made by the defendants it is asserted that the contract is indefinite. Thereupon they propound the following queries: (a) What was meant by the parties when they used the words "final determination" in the option agreement? (b) What was meant by the parties when they used the phrase "and only in the event the final determination is in favor of third party"? (c) What was meant by the parties when they used the phrase "if in favor of second party said option shall not be exercised"? (d) What was meant by the parties when they used the wording "said option to be exercised within thirty days after the final determination as to the ownership of the east 285 feet of tide land location No. 154, and not before"? The first query we have already answered. The second, third and fourth do not call for answers. The passages quoted are very definite statements. Why they were made is immaterial. However, the answers appear on an inspection of the record. If the "final determination" had been made in favor of Mrs. de Davis, Mr. Banning would not have had title to any adjoining lands and would have had no inclination to exercise the option to purchase a strip irregular in shape, 300 feet long, and containing less than four-tenths of an acre, entirely disconnected from any other lands owned by

him. In the same event Mrs. de Davis would have had reasons to retain title because she would have held lands immediately adjoining the option lands. The answer to the remaining question is plainly this, that the best of business methods called upon the parties to act promptly as soon as the conflicting rights to the adjoining lands had been determined. As part of this same point the defendants state: "The court is also required to determine whether or not the option agreement refers to 'ownership of the east 285 feet of tide land location No. 154', or does it mean something else, towit: that portion of tide land location No. 154 which lay immediately west of the option property?" That is certain which can be made certain. The contract refers to documents which would no doubt make the description plain. We must assume they did. The question as propounded is answered in specific terms by the last paragraph in finding No. II, which is as follows: "The said property being specifically described as bounded on the north by said Northerly Government Pier Head Line extending Westerly and on the East by the line of high tide of Wilmington Bay, as established by decree of the court in the tide land cases. On the South by the said Southerly Government Pier Head Line extended Westerly, and on the West by the East line of Tide Land Location No. 154." As stated above the record is such that we are not at liberty to enter into an examination of the additional question as to whether the evidence supports the finding.

We find no error in the record. The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.